SCRIBNER, J.
This is a petition in error tc reverse the judgment of the *706 oourt of common pleas in a case wherein the plaintiff in error was the plaintiff and the defendant in error was defendant, whioh verdict and judgment in the court of common pleas were in favor of the railway company.
This action was commenced in the court of common pleas on March 8, 1890. It was brought to recover damages for an injury alleged to have.been sustained by the plaintiff while in the service of the railway company, in consequence of alleged negligence on the part of the company connected with the movement of cars in one of the elevators used in connection with said railway. The record shows in regard to this case, that at the April term, 1890, it was tried to a jury in the court of common pleas, and that at that trial the jury found a verdict in favor of the plaintiff. Motion for a new trial was filed by the defendant railway company, which was granted by the court and the verdict was set aside and a new trial ordered. Afterwards, at the September term, 1891, of the oourt of common pleas, the case was again tried to a jury, and upon that second trial a verdict was again returned in favor of the plaintiff. A motion for a new trial, made on behalf of the railway company, was, in January, 1892, considered by the court, and the motion was overruled and judgment rendered upon that verdict in favor of the nlaintifí and against the railway company. As a part of the history of this case of which we have knowledge, the railway company prosecuted a petition in error in this court to reverse that judgment, and upon the hearing of that petition in error this court reversed the judgment of the court of common pleas and granted a motion for a new trial upon the ground that the verdict was not sustained by sufficient evidence. The record in this case presented here does not show that a proceeding in error was ever' prosecuted,' or that the judgment rendered in the court of common pleas in favor of the plaintiff at the time it was made was ever reversed, or that a new trial was ever granted. The mandate sent back to the common pleas indicated what had been done in this court in this case, but ir appears never to have been entered upon the journal of the court of common pleas by the clerk, as it should have been done, and as was required by the statute to be done; but the journal entry here proceeds to show that in April, 1895, another trial was had of the case, and upon that trial the verdict of the jury was in favor of the defendant. A motion for a new trial by the plantiff below was overruled, and a judgment was rendered in fsvor of the defendant. The plaintiff then filed *707 bis petition in error in this court, and the case is now before us upon the petition in error so presented by the plaintiff below.
The plantiff in error, in the petition in error, assigns for error:
“1. That the said court erred in ruling out the evidence of the witness Patrick Daugheny, offered at the said trial by the said plaintiff, as shown on pages 46 and 47 of the bill of exceptions.
“2. That the said court erred in excluding from the consideration of the jury the evidence of the witness .John Ger-kins, as shown on page 108 in the bill cf exceptions filed herein.
■ “8. That the said eourt erred in allowing Mr. Potter,, the attorney for the defendant, to cross-examine Thomas Brandon, the plaintiff, and introduce the testimony of the plaintiff as he did by such cross-examination after the plaintiff, had rested his case , as shown on pages 186 and 187 of the bill of exceptions filed herein.
“4. That the said court erred in sending the special finding to the jury, as requested by Mr. Potter, the attorney for the defendant, and erred in instructing the jury to answer such findings by yes or no, and erred in instructing the foreman of the jury to sign such special findings of faots, as shown on page 162 of the bill of exceptions filed herein.
“5. That the said judgment was given for the said defendant, when it should have been given for the plaintiff in error.”
Upon the disposition of this case upon the petition in error filed by the railway company,'the case has been considered in all its material facts, and was discussed by the court; and 1 refer to the opinion delivered upon that occasion as stating the principal faots bearing upon the acts of the parties as developed by the testimony,and the view then taken by this court in considering these facts, and I propose to avail myself now of the statement then made as furnishing a brief method of stating the facts'in the case as we view them:
‘‘This case comes into this court upon a petition in error from the court of comon pleas. On April 11, 1889, Thomas Brandon, plaintiff below, was in the employ of the Lake Shore and Michigan Southern Railway Co., as a laborer in elevator ‘‘A,” located in this city. His sérvice and duties consisted in assisting in moving, loading and unloading cars with grain. The elevator in which he was employed was furnished with bine into which and from which grain *708 was loaded and unloaded. It was also furnished with scales upon which cars were run by means of railway tracks, being loaded from or unloaded into these bins. At the time at which the accident occurred which is complained of in this proceeding, the company used for the purpose of moving its cars upon the scales to be loaded, and for the purpose of removing the leaded cars from the scales and to place thereon other cars, a rope and certain tackle which was operated by steam power. There was a drum or cylinder, whichever it may be called, located in the elevator near these scales. This drum or capstan was set in motion and was caused to revolve by steam power, and a large and heavy rope was wound around this capstan or drum, and on the end of it was a large hook which was attached to the car, either where a single.car or more than one was to be moved. This rope was coiled several times around the drum, and ata certain time a signal would be given to the engineer to start the drum or .capstan and put it in motion; and that being done,.the drum being put in motion, a man would take hold of the rope and walk along in the proper direction, tc manage it, and the drum so revolving, with the repe coiling about it, and a hook at one end attached to the car, would put the car in motion and move it towards the scales. Upon reaching these scales the forward car, the one which was intended to be placed upon the scales for the purpose of being loaded, would be caused, by the force or motive power imparted to it, to contact with the loaded car upon the scales, and by force of the contact and collision would force tire loaded car off the scales upon the track before it, and the forward loaded car of the moving train or string of cars would be thus forced upon the scales, and there stop, a man being thero to keep it from running of the soales by the use of a block or some such apparatus. This method of moving empty oars from the scales, and forcing the loaded cars upon the scales, had been in use for some considerable period of time. Prior to that, horse-power was used — prior to the adoption of steam power. Horses had been attaohed or hitched to the repe, and by a proper movement upon the part of the horses the empty cars would be forced against the leaded car driven to, and the empty cars’ would then be placed in position on the scales for the purpose of leading.
“The plaintiff below, Mr. Brandon, had been in this service perhaps t9n to twelve years, and during a considerable portion of that time was engaged in the work about the elevator, and employed in the work of plaoing cars on the elevator scales for loading and unloading, for several years.
*709 “On April 11, 1889, the date I have already mentioned, a loaded car was standing on the scales. It was desired to remove that car from the scales and place another car thereon for the purpose of being leaded. Four empty cars were there; the men were at their proper planes; the hook of this rope was attached to the second car from the front cr in advance, and the scales, I should say, were located at the north end or north part of the elevator building. The cars were moving from the southern portion of the building northward along the track, and the loaded car was standing upon the scales at what was known as bin “B.” The four cars, coupled together, were brought forward for the purpose of being sent, in the manner I have mentioned, against the loaded car. The hook in the rope was attached to the second car; the rope was properly adjusted around the drum; the proper signal was given; steam was applied, and the cars were set in motion and moved towards the scales, and were moving about as fast as a man could walk, but not a-fast w'alk.
“As the advanced car approached the scales, Mr. Brandon —who with his fellow laborers was at that time properly attending to his duties — stepped in between the first car and the second car, to uncouple them. The slack of the cars was necessarily taken up by reason of the fact that the hook and rope were attached to the second car and they were being propelled northward towards the loaded car by means of this attachment and the application of steam power to the dram. One of the other men moved forward to go in and make the coupling; but Mr. Brandon was nearer and succeeded in getting into position first. It seems that the pin stuck, or did not readily come out from the drawbars. The advanced car came into collision with the loaded car upon the scales, and by force of that collision, of course, rebounded and was forced backward.
“In some way, Mr. Brandon’s hand and arm were caught between the dcadwoods, and were injured. It is to recover for that injury that he brings this action. In the court of common pleas he recovered a verdict upon which judgment was rendered, and this action was brought here by the company tc revere that udgment, mainly upon the ground that the verdict was not sustained by sufficient evidence.”
The facts are still further elaborated in the conclusion of the opinion, TChicb is:
“ We have carefully looked through this record, with an *710 anxious desire to do exact justioe in the case, but we are unable to see our way clear in the discharge of our duty, to permit this judgment to stand, and the order will be that the judgment is reversed and the verdict set aside, as not supported by sufficient evidence, and the cause remanded for a new trial.”
The record in this case is made.up largely — to a considerable extent, at least — of the testimony adduced upon the former hearing, but there is some additional testimony carried into the record. We are unable to discover in the record .anything to lead us to oonclude that the judgment upon the present hearing should be in any respect different from that rendered upon the former hearing of the petition in ■error.
There are, however,some additional matters assigned — or, rather, presented — as bearing upon the case, set out in the petition in error, which I have read, and to which I will call attention.
It. is suggested in the brief filed by counsel for the plaintiff in error, in the first place, that he ought to be permitted to intervene in this particular: ‘‘We contend that the first ground of error is well taken.” That ground is ‘‘that the court erred in ruling out the evidence of the witness Patrick Daugheney, etc.” And it is said here (in the brief) that ‘‘the witness, Daugheney, the record shows, was experienced in his business, and he was simply asked to give his opinion upon a given statement of facts on a point within his experience, and which is always proper. This error was prejudicial to plaintiff’s rights.”
I will here refer to the evidence briefly. The record shews this action on the part of the court. Mr. Daugheney was a witness upon the stand, introduced by the plaintiff, and he was asked these questions:
“Q. What was it you were told to do?”
(In this examination the witness is testifying to matter 'Occurring at the time of the accident ) He answers: ‘‘As •soon as it would hit this car that was loaded, to take the hook off, take off the repe — he gave the signal.” (That is, he was asked to describe the method of transacting this business, and he made that reply.)
“Q. What was the fact as to whether you took the rope off, after, or not, as it hit the loaded car? A. I could take it off after it hit another car, but not with the other men on it — the minute it slacked I could take it off quick.
“Q. You spoke about a backwards and forward motion *711 that these oars had, how Jong did that last? A. Well, it didn’t last much.
“Q. What effect, if any, did this rope, operating there in connection with these pulleys, have upon the ccnvenience of getting up and down alongside of the track there between the cars and the side of the elevator?’
‘Mr. Potter: I object to that; I think that he might describe the space and the conditions, and how it operated, but it is not for him to give his opinion about it. •
“Mr. Hamilton: I want his experience; I don’t want his-opinion.
“Mr. Potter: I object to it.
“Mr. Hamilton: Our contention is, that this was a dangerous place for that sort of business.
“The.Court: The witness has described to the jury the space that there was there between the car and the plat-' form, and I believe he called attention to the fact that the rope was on the ground, or near the ground; that they had to step over it, etc. It seems to me that it is for the jury to determine from the evidence as to the convenience or inconvenience of it.’’
The-objection was sustained, and counsel below excepted.
Now it appears to us that the court was right in this ruling. It was not for the witness to state to the jury whether it would be convenient or inconvenient or how convenient or inconvenient it would be for a.man engaged in this work to pass over the ground upon which these cars were being moved, or this rcpe was being used. The witness could, as he did, state to the jury the exact situation here; by staling the facts and situation, he could enable the jurors to determine whether or not it as convenient or inconvenient to pass. We think, therefore, that the court committed no error. Besides, I might suggest that the record discloses no offer on the part of counsel for the plaintiff to prove- anything; he simply asks the question as to whether it was cm-venient or inconvenient, and the court holds that that is a question for the jury, and the witness had been permitted to state the facts surrounding, and the counsel excepts and leaves it there.
The next objection relates to the testimony of John Ger-kins, and the counsel in his memorandum says: “We cou-tend that the second ground of error is well taken for the reason that the evidence was simply in proof of facts that tend to prove negligence, even to the extent of violating the written rules of the company as posted and published. ” The *712 assignment of error is: “That the said court erred in excluding from the consideration of the jury the evidence of the witness John Gerkins, as shown cn page 108 in the bill of exceptions filed herein.” Mr. Gerkins was a witness called by the plaintiff, and in the course ol his cross-examination, on page 105 of the record, this appears:
“Q. You have no present recollection of.seeing them butt a loaded car off by'running empty cars down against it? A. If they did, it was done by mistake; it wasn’t allowed.
“Q. I am not asking you that; I am asking you this: Have you any recollection during the fourteen years of your service there, of seeing it done that way? A. I think I saw such things when it was done, but it wasn’t allowed; where it was done in case that they could’t help it, something like that.
“Q. You say it wasn’t allowed? A. No, it was against the rule.
“Q. Against the rules? A. To bump the car off the scale —entirely.
“Q. Who established that rule? A. It was a Lake Shore rule from headquarters.
“Q. Did you ever see such a rule as that? A. They never showed me the rules, but W. L. Stowe brought the rules there; yes, I saw the rules there; that no car should be bumped off the scales; W. L. Stcwe brought the rules there.
“Q. When did you see that rule? A. That was a good while ago, because the scales used to have to be in repair.
n Mr. Potter: He has spoken of a rule here. There is no charge made here or complaint; this is the first time I have heard anything of that kind, and it was a remark made by the witness, and was not in response to an interrogatory put by Mr. Hamilton. It seems now that this rule was a printed rule. I think that the whole subject is incompetent and irrelevant,, and I ask to have it removed from the jury.
“Mr. Hamilton: I object to that. It has all been brought cut by the gentlemen.
“Mr. Potter: It is purely a matter volunteered by the witness. There is not a complaint that any rules of the company have been violated in that regard.”
And the statement,of Mr. Potter is true; the petition makes no allegation on that score.
“Mr. Hamilton: The objection I make is that this matter has been brought out by himself. 1 I am not talking about whether it is relevant or irrelevant' — I didn’t ask him about the rule, but, my friend pushed the inquiry as to the practice *713 of butting those oars off, which he said never existed, and then he draws out this rule. ”
The controversy is pursued here for a time, and finally the court says this:
“The question arose in this way: In answer to a question the witness' volunteered the statement that that was against the rule — cf course, it didn’t appear at that time what rule was in the mind of the witness, or what regulation he referred to, cr anything about it. I take it that the counsel for the defense had a right to wait until he had a ohanoe to examine the witness and refer to this matter. Now, on cross-examination, the witness testified that what he meant was that it was a rule uf the Lake Shore Company, the defendant in this case, and that that rule was in writing. It seems to me that defendant had a right to wait: until it was developed what the witness meant by this statement, before he asked that it be excluded. I don’t know what the effect would be in this case one way or the other under the issue. The witness volunteered the statement; it was not in response to the question. And in explanation of this statement, on cross-examination, that the witness attempted to give of the statement made on direct examination, he has ■spoken of the written rules of the Lake Shore Company in reference to the handling of these cars. They have not had ■any notice of anything of that kind, and I think the motion should be sustained.”
We think the court was right in this. The witness in the course of his cross-examination, made a statement to the ■effect that to-do a thing that the witness is asked whether he had ever seen done, in a general way, said that he had seen the loaded cars, standing on the scales butted off, but that it had been against the rules to do that, and he is inquired of as to what rules he had reference and what was the rule. On cross-examination, eounsel, asking to ascertain what- the matter was that the witness was talking about, at the very moment it is disclosed that it relates to a printed rule of the company, that the witness had seen posted along the line of the track — counsel promptly moves to exclude that statement, for the reason that I have read, and the court' sustains it; and we certainly think the court was right in the ruling that it made in that respect.
The third objection is, as to the court permitting counsel for the defendant, after the plaintiff had closed his case, to recall the plaintiff for the purpose of cross-examination. Immediately after the plaintiff had rested,Mr. Potter,counsel for the company, said: “I want to read the cross-exam *714 ination of Mr. Brandon, on the former trial of this case as a part of his cross-examination on this trial.
Hamilton & Ford, for Plaintiff in Error.
E. D. Potter, Jr., for Defendant in Error.
“Mr. Hamilton: I object to that.
“Mr. Pott,er: Then, if you object, I will'recal Mr. Brandon for further examination and put him on the stand.”
The plaintiff was recalled, and a further examination was had, and he made his statement, and we can see no substantial ground for objecting to this being done. Certainly it is a common practice for counsel, and permitted by the oourts, to recall a witness at almost any stage of the case, for the purpose of cross-examination, particularly where it is desired to contradict a statement of witness who has testified,by the evidence of other parties. Now here the witness called was the plaintiff in the action. It is a common practice, and we think sanctioned by the rules of law.
Now then, there was.a further objection: That the court permitted a special finding in the case to be submitted and answered by the jury. These interrogatories were submitted to the jury upon the application of the defendant below.
The first was: “Did the plaintiff know of the fact, at the time he stepped in to uncouple the cars, that there was a-loaded car-upon the scale track to be moved off of the scale by other cars being pushed or moved against it? And the answer returned by the jury was “Yes.”
“2. Was the plaintiff familiar with the method and manner in which cars were'moved in said elevator and off the scale? A. Yes.
“3. Did the plaintiff attempting to draw the pin, know, or could he have known by the exercise of ordinary care on his part in the performance of his service, of the danger of having his hands or arms caught between the deadwoods of the moving cars when the same case together? A. Yes.
“4. Was the plaintiff himself negligent, and if so, did such negligence or want of proper care on his part oause or contribute prcximately or immediately to produce the injury of which he complained? A. Yes.”
Well, the statute, as it seems to us,. expressly provides that this may be done. In point of fact, the requirement is imperative, were the interrogatories submitted are relevant and pertinent to the issues to be tried, and we think these questions bear directly on the question of contributory negligence on the part of the plaintiff below.
This covers all the grounds assigned for error in the petition in error, and we fail to find that the record discloses any error in these proceedings, and the judgment therefore will be affirmed.